Melissa G. CATES, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, INCORPORATED,**
Defendant.

No. 1:95–CV–352.

United States District Court,
E.D. Tennessee.

Oct. 30, 1996.

L. Thomas Austin, Attorney at Law, Dunlap, TN, for Plaintiff.

Thomas A. Williams, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napo, Chattanooga, TN, for Defendant.

### MEMORANDUM

COLLIER, District Judge.

Before the Court is the Motion for Summary Judgment filed by Defendant Metropolitan Life Insurance Company, Incorporated ("Metropolitan") (Court File No. 10). Plaintiff Melissa G. Cates ("Cates") filed a response (Court File No. 12). Metropolitan filed a Reply (Court File No. 16) to which Cates filed a response (Court File No. 18). For the following reasons, the Court will GRANT the motion for summary judgment.

### I. PERTINENT FACTS

William G. Cates, the decedent and husband of Plaintiff Cates, worked at Columbus McKinnon Corporation, Dixie Industries Division, and participated in its employee welfare benefits plan ("the Plan"). Significantly, the Plan states it "will pay Accidental Death ... Benefits for a Covered Loss ... if (a) *that accident is the sole cause of the injury* ; and (b) *that injury is the sole cause of that Covered Loss* ; and (c) that Covered Loss occurs not more than 90 days after the date of the accident" (Court File No. 12, Ex. B, p. 13) (emphasis added). The Plan also states it "will not pay for any Covered Loss ... *if it in any way results from, or is caused by or contributed to by* : ... (d) injuring oneself on purpose; or (e) the use of any drug or medicine" (*Id.* at p. 14) (emphasis added).

William G. Cates died in a single vehicle automobile accident on October 8, 1994. At approximately 1:15 a.m., William G. Cates, while driving and the sole occupant of his 1993 Nissan pickup truck, veered off the right edge of the highway, reentered the highway, crossed over his lane of travel, and traveled across the on-coming lane and went over a bluff. He was ejected from the automobile and died at the scene from severe head trauma (Court File No. 12, Exhs. D and E).

Both parties agree that at the time of his death his blood alcohol content ("BAC") measured 00.18 [1] (Court File No. 11, p. 2; Court File No. 12, p. 2). Under the terms of the Plan, the decedent had named his wife as beneficiary. She submitted a claim for accidental death benefits, which Metropolitan denied on April 28, 1995. In denying the claim, Metropolitan referred to the above-cited Plan provisions and stated:

> The mental and physical impairments caused by alcohol consumption were intentionally self-inflicted, and alcohol is considered by the medical community to be a drug. In addition, the act of driving while so impaired rendered the infliction of serous (*sic.*) injury or death reasonably foreseeable and, hence, not accidental as contemplated by the [P]lan.

(Court File No. 12, Ex. F, p. 2).

Both parties agree the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.,* governs the outcome of this matter (Court File No. 11, pp. 2–3; Court File No. 12, p. 4). Both parties also agree Metropolitan's denial of Cates' benefits claim is subject to the arbitrary and capricious standard of review applicable to ERISA cases (Court File No. 11, p. 3; Court File No. 12, pp. 4–5); *see Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir.1996).

### II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving

---

1. Under Tennessee law, a blood alcohol content of .10% or more creates a presumption that a driver is under the influence of alcohol and is impaired. Tenn.Code Ann. § 55–10–408. Driving under the influence of an intoxicant is against the law in Tennessee. Tenn.Code Ann. § 55–10–401.

party to conclusively show no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994); *Kentucky Div., Horsemen's Benev. & Protective Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir.1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411; *see·also Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404–06 (6th Cir.1992) (holding courts do not have the responsibility to search *sua sponte* the record for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. There must be some probative evidence from which the jury could reason-

ably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

## III. ANALYSIS

■ Cates counters Metropolitan's summary judgment motion by primarily relying on a recent change in Tennessee law (Court File No. 12, pp. 5–10). In *Harrell v. Minnesota Mutual Life Ins. Co.,* 937 S.W.2d 809 (Tenn.1996) (interpreting an accidental death insurance policy), the Supreme Court of Tennessee rejected its long-held "*Distretti* Rule," which "provides that before a death will be considered accidental under the terms of an insurance contract, the means, as well as the result, must be involuntary, unexpected, and unusual." 937 S.W.2d 809, 1996 WL 495458, at p. *1; *see Mutual Life Ins. Co. of New York v. Distretti,* 159 Tenn. 138, 17 S.W.2d 11 (Tenn.1929). Applying the *Distretti* Rule meant that "a death that is caused by an insured's intentional act, or is a foreseeable consequence of an insured's voluntary act, is not considered 'accidental.'" *Harrell,* 937 S.W.2d 809, 811.

The *Harrell* court stated it "abandoned the distinction between 'accidental means' and 'accidental results.'" *Harrell,* 937 S.W.2d 809, 810, 813. The abandoned distinction followed this analysis:

> [A]ccidental death is an unintended and undesigned result arising from acts voluntarily done, whereas death by accidental means is a result arising from acts unintentionally done or events undesignedly occurring. The term 'accidental means' refers to the occurrence or happening which produces the result, rather than the result; it is concerned with the cause of the harm rather than the character of the harm.

*Id.* at p. 811 (quoting 10 *Couch on Insurance* 2d § 41:29, pp. 44–5 (1982 & Supp.1995)). In overturning the *Distretti* Rule, the court concluded, "if death is the unanticipated and unexpected result of an intentional, voluntary act, it is accidental in the ordinary and plain sense of the word and recovery is available

under an accidental death insurance policy." *Id.* at p. 814 (holding that where "the insured died as the result of an intentional act, such as voluntary intoxication, but did not intend or expect death to result, such death is accidental"); *see also Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1084–89 (1st Cir.1990) (abandoning the means/result distinction under ERISA and finding the result of a volitional act not to be an accident), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

Cates' reliance on *Harrell* is misplaced. The case before the Court is an ERISA case. The Court's responsibility is not simply to interpret the contractual terms of an accidental death insurance policy. Rather, ERISA's expansive preemptive provisions are implicated. *See Tassinare v. American Nat. Ins. Co.,* 32 F.3d 220, 224 (6th Cir.1994) (recognizing "virtually all state law claims relating to an employee benefit plan are preempted by ERISA"); *In re General Motors Corp.,* 3 F.3d 980, 984 (6th Cir.1993) (preempting a breach of contract claim); *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 137 (6th Cir.1993) (preempting a breach of contract claim); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696–97 (6th Cir.1989) (preempting a claim for punitive damages); *Varhola v. Doe,* 820 F.2d 809, 817 (6th Cir. 1987) (preempting a claim for punitive and extra-contractual damages).

■ The Court must review the denial of Cates' accidental death benefits claim in light of ERISA's arbitrary and capricious standard of review. *See Lake,* 73 F.3d at 1376. The Court may only analyze the evidence available to the Plan administrator at the time of the decision, *see Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991) (applying ERISA), and will affirm Metropolitan's denial of benefits if its interpretation of the applicable Plan provisions is reasonable, *see Wendy's Intern., Inc. v. Karsko,* 94 F.3d 1010, 1012 (6th Cir.1996) (applying ERISA), or is rational in light of the Plan's provisions, *see Abbott v. Pipefitters Local Union No. 522,* 94 F.3d 236, 240 (6th Cir.1996) (applying ERISA). Regarding the arbitrary and capricious standard, the United States Court of Appeals for the Sixth Circuit recently stated:

This standard 'is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'
*Id.* (citation omitted).

Cates argues Metropolitan's interpretation of the Plan is unreasonable because Tennessee no longer follows the *Distretti* Rule. Cates further contends *Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476 (W.D.Tenn.1996), a case factually very similar to this case, does not offer guidance because it predates *Harrell.* The Court disagrees. First, *Harrell* applied Tennessee contract law in the absence of ERISA preemption. Second, *Fowler* is an ERISA case in which Tennessee law does not control. Third, the *Fowler* court acknowledged Tennessee's application of the *Distretti* Rule but did not strictly rely on Tennessee law to make its decision. *See Fowler,* 938 F.Supp. 476, 478–79 (noting "Tennessee law is instructive" and citing federal decisions).

■ Several federal courts reviewing ERISA cases have recognized that foreseeable harm resulting from an insured's intentional actions is not accidental. *See Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1053–54 (7th Cir.1991); *Wickman,* 908 F.2d at 1088–89; *Fowler,* 938 F.Supp. 476, 480; *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 178 (D.N.J.1993); *Weisenhorn v. Transamerica Occidental Life Ins. Co.,* 769 F.Supp. 302, 306 (D.Minn.1991). Given these prior interpretations of similar ERISA provisions, the Court cannot say Metropolitan's denial of Cates' accidental death benefits claim was arbitrary and capricious. It is neither unreasonable nor irrational in light of the Plan's provisions for Metropolitan to conclude "the act of driving while [intoxicated at BAC 00.18] rendered the infliction of serous (*sic.*) injury or death reasonably foreseeable and, hence, not accidental as contemplated by the [P]lan" (Court File No. 12, Ex. F, p. 2).

An Order will enter.