**Joyce WALKER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 96–CV–60248–AA.

United States District Court, E.D. Michigan. Southern Division.

April 3, 1997.

Eugene A. Goreta, Rhoads & Goreta, Ecorse, for Joyce Walker, plaintiffs.

Randolph D. Phifer, Patterson, Phifer, Detroit, for Metropolitan Life Insurance Company, defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

This ERISA action arises out of defendant Metropolitan Life Insurance Company's (MetLife) decision to deny plaintiff Joyce Walker benefits under an Accidental Death and Dismemberment policy. Plaintiff and defendant both have filed motions for summary judgment. For the reasons set forth below, defendant's motion shall be granted and plaintiff's motion shall be denied.

## BACKGROUND

Plaintiff's husband, Stephen Walker (the decedent), was an hourly worker at AutoAlliance International (AAI) in Flatrock, Michigan. As part of his employment, he received group life insurance and accidental death and dismemberment insurance (AD & D). Plaintiff was the named beneficiary on the policies. The terms of the group life insurance and AD & D policies were set forth in a summary plan description which the insured received. The summary plan description provides, "[i]f you die or are injured as a result of an accident, AD & D insurance pays benefits." The summary plan description also set forth losses not covered under the AD & D policy which included losses for "injuring yourself on purpose."

The decedent was in a serious motor vehicle accident on April 19, 1995, and died on May 19, 1995, as a result of injuries sustained in that accident. The police report indicates that the decedent was driving at a high rate of speed when he crashed into a building and that he had been drinking alcohol at the time of the collision. A blood test was taken shortly after the accident which showed that the decedent had a blood-alcohol level of .22 percent, which is more than twice the legal limit. The autopsy report states that decedent's death was caused by multiple blunt trauma complicated by bronchopneumonia as the result of being the driver in a motor vehicle collision.

On June 13, 1995, defendant MetLife received from AAI a death claim submitted by the plaintiff for both basic life insurance and AD & D benefits as a result of the decedent's death. MetLife paid the basic life insurance benefits of $50,000 plus interest on June 19, 1995. Following payment of the basic life insurance benefits, MetLife conducted an investigation as to plaintiff's claim for AD & D benefits. On February 23, 1996, MetLife sent plaintiff a letter advising her that it was denying plaintiff's claim for AD & D benefits. The letter stated "A crash which results from driving with a high percentage of blood alcohol content is not an 'accident' within the meaning of the plan; Federal common law construes 'Accidental Death' as meaning an event which is fortuitous, unexpected or unanticipated, which cannot reasonably be foreseen." Defendant MetLife also advised plaintiff that the loss was not covered because the AD & D policy excludes coverage for losses caused when "injuring yourself on purpose."

Plaintiff filed this action in Wayne County Circuit Court. Defendant removed the action to this court on the basis that the action is governed by the Employee Retirement

Income Security Act (ERISA) of 1974 as amended, 29 U.S.C. § 1001 *et seq.*, and thus, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331. Plaintiff agreed that the insurance policy at issue in this case was part of an ERISA plan provided to the decedent by his employer and that the issues raised in her complaint are governed by ERISA.

In its motion for summary judgment, Met-Life argues that a death resulting from drunk driving cannot be considered accidental as it is the foreseeable consequence of such conduct. MetLife further argues that death resulting from drunk driving is not covered by the policy because the policy excludes coverage where the death is caused "by injuring yourself on purpose." In the alternative, MetLife argues that it is entitled to summary judgment on the ground that plaintiff failed to exhaust her administrative remedies by failing to request a review of MetLife's claim determination.

Plaintiff also has moved for summary judgment. She argues that decedent did not intend to harm himself and that his death was an accident. In the alternative, plaintiff asks that the matter be remanded to MetLife to consider the testimony of a new witness, Jason Humberston, whose existence allegedly was unknown at the time the administrator made the initial decision to deny benefits under the AD & D policy. Plaintiff contends that Humberston will testify that he believes the decedent's tire blew out shortly before the accident. For the reasons discussed below, plaintiff's motion for summary judgment shall be denied and defendant's motion shall be granted.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *F.D.I.C. v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). Summary judgment is prop-

erly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line*, 979 F.2d 1171, 1174 (6th Cir.1992).

The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir.1994)(citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences from it must be construed in the light most favorable to the nonmoving party. *Enertech Electrical, Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945 (6th Cir.1992). Although the court must draw all justifiable inferences in favor of the non-moving party, there must be a disagreement regarding an item of material fact. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 774 (6th Cir.1996).

When a motion for summary judgment is made and supported as provided in Rule 56(c), the non-moving party may not rest upon the mere allegations or denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. If the non-moving party does not so respond, summary judgment is appropriate. *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995).

## ANALYSIS

### 1. *Standard of Review*

The parties agree that the plan gives the administrator discretionary authority to determine eligibility for benefits. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that benefit determinations are to be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the plan." The Sixth Circuit has interpreted *Bruch* to require that the plan's grant of discretionary authority to the administrator be "express." *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996). In this case, defendant has submitted an affidavit of its employee which states that the administrator has discretion to determine eligibility for benefits and construe the terms of the plan, but defendant has not submitted the plan language itself in support of its claim. Plaintiff, however, has not disputed that the arbitrary and capricious standard applies and has admitted that the benefit plan gives the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Accordingly, the arbitrary and capricious standard applies.

■ Under the arbitrary and capricious standard, a court should uphold the administrator's interpretation of a plan if that interpretation is reasonable. *See Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir.1992). The court may only consider evidence that was presented to the administrator at the time the decision was made. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991). Accordingly, the testimony of Jason Humberston is not to be considered.

### 2. Exhaustion of Administrative Remedies

■ Defendant argues that it is entitled to summary judgment on the grounds that plaintiff failed to exhaust her administrative remedies because she did not initiate the internal appeal process of her claim. *Costantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir.1994); *Miller,* 925 F.2d at 986. Plaintiff responds that there is no requirement that plaintiff exhaust her administrative remedies where doing so would be futile or the remedy inadequate. *Costantino,* 13 F.3d at 974. In *Costantino,* the court found that exhaustion of administrative remedies was not necessary because plaintiffs were raising a constitutional challenge to the calculation of their retirement benefits under retroactive application of the Tax Reform Act of 1986. *Id.* The court ruled that an administrative hearing on constitutional issues would be pointless and

inappropriate. Similarly, in this case, plaintiff has raised a question regarding the proper interpretation of federal common law. When MetLife denied benefits in this case, it informed plaintiff that it was doing so, at least in part, on the basis of federal common law. Based on MetLife's reason for denying benefits, the resolution of plaintiff's claim does not depend solely on an interpretation of the ERISA plan but on an interpretation of the federal common law. Such a question is properly decided in federal court not in an administrative hearing. Accordingly, the court will decide the issue of federal common law presented here.

### 3. MetLife Properly Denied Benefits

The questions presented in this case raise issues of first impression in a developing area of the law. The Sixth Circuit has not addressed the issues raised in this action. Last month, however, the exact issue presented in this case was decided by another judge of this district. *Miller v. Auto–Alliance Int'l,* 953 F.Supp. 172 (E.D.Mich.1997) (Gadola, J.). In *Miller,* plaintiffs sought AD & D benefits arising out of the same ERISA plan at issue here which they claimed were wrongfully denied by MetLife. *Miller,* at 175. As in this case, MetLife denied benefits in *Miller* because the decedent died in a fatal motor vehicle collision while intoxicated. The district court analyzed MetLife's decision under the arbitrary and capricious standard and found that its decision to deny benefits was not unreasonable. In doing so, the court relied in part on two recent district court cases from this circuit in which the court found that a fatal crash involving a person driving while intoxicated was not considered "accidental." *Id.* at 174–75. Specifically, the court cited *Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476 (W.D.Tenn.1996) and an unreported case from the Eastern District of Tennessee. *Id.*

In this case, defendant also relies on *Fowler v. Metropolitan Life Ins. Co., supra,* which upheld MetLife's decision to deny accident benefits where the insured died as a result of driving while intoxicated. Plaintiff, on the other hand, argues that *Fowler* is no longer controlling law because the cases upon which

*Fowler* relies have been overruled. Plaintiff is correct that the Tennessee state cases relied upon by the district court in *Fowler* have been reversed; however, *Fowler* also relied on several federal ERISA cases including *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990), which the parties agree sets forth the controlling standard in this case.

The Tennessee rule which the district court relied upon in part in *Fowler* was the "Distretti rule." The "Distretti rule" was a common law rule developed by Tennessee courts which held that if the insured did a thing voluntarily and intentionally which, as a reasonable man, he foresaw or should have foreseen that death or injury might result, such death or injury was not an accident. Since *Fowler* was decided, the Tennessee Supreme Court overruled *Distretti* and its progeny. *Harrell v. Minnesota Mut. Life Ins. Co.,* 937 S.W.2d 809 (Tenn.1996).

■ In *Harrell,* the court explained that insurance contracts should be construed so as to give effect to the intention and express language of the parties, with ambiguous language construed against the insurance company in favor of the insured. *Id.* at 814. The court stressed that "an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy. Policy language should be given its plain meaning, unless a technical meaning is clearly provided in the insurance policy." *Id.* Had MetLife specifically excluded coverage for injury caused by the insured driving while intoxicated, this litigation would have been avoided. Although the Tennessee Supreme Court's opinion in *Harrell* marked a significant change in the manner in which Tennessee construes insurance contracts, plaintiff has cited no cases indicating a similar shift in federal ERISA law. In construing an ERISA plan, the court must apply federal substantive law, not state law. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ The standards for determining whether an injury or death was accidental under the terms of an ERISA insurance policy were set forth by the First Circuit in *Wickman v. Northwestern Nat. Ins. Co. .,* 908 F.2d 1077, 1088 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). Both plaintiff and defendant agree that *Wickman* is the controlling federal standard for determining when an accident occurs under the terms of an accidental death policy. In *Wickman,* the court stated that the proper starting point for determining whether an injury was accidental under the terms of a policy is "the reasonable expectations of the insured when the policy was purchased." *Id.* at 1088. "If the fact-finder determines that the insured did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were unreasonable." *Id.* Reasonableness is to be analyzed first from the subjective perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences. If the evidence is insufficient to determine the insured's subjective expectation, then reasonableness is to be determined from the objective perspective. *Id.* at 1088–89. Under the objective analysis, one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. *Id.* at 1088.

In *Wickman,* the issue was whether Wickman's death was accidental under the terms of an AD & D policy where Wickman died from injuries he sustained after he climbed over a bridge guardrail, hung onto the guardrail with one hand, and fell 50 feet to railroad tracks below the bridge. The court found that Wickman's death was not accidental because a reasonable person in Wickman's shoes would have expected to die or to be seriously injured as a result of his actions, and that any other expectation would be unreasonable. *Id.* at 1089. In reaching this conclusion, the court noted that Wickman possessed no acrobatic or athletic skills which would have enabled him to hold on to the guardrail. *Id.*

Defendant and plaintiff have both cited to *Wickman* in support of their motion for summary judgment. Under *Wickman*, the court must first analyze the decedent's expectations from the subjective perspective, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences. In *Wickman*, the court explained that the starting point for determining whether an injury was accidental is the reasonable expectations of the insured when the policy was issued because, "[g]enerally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments." 908 F.2d at 1088.

█ In this case, plaintiff has submitted evidence regarding the insured's subjective expectations. There is no evidence to suggest that the insured intended or expected to be injured. He was wearing a seat belt at the time of the collision; he planned to meet his wife after his ride; he had driven the route on previous occasions after drinking alcohol; and, eyewitnesses saw him attempt to turn his vehicle to avoid the crash. The evidence presented indicates that the decedent did not intend or expect to be injured when he drove while intoxicated.

Having found that decedent did not expect or intend to be injured, the next question is whether or not a reasonable person with the decedent's background and experience would have viewed the injury as highly likely to occur as a result of decedent's intentional conduct in drinking and driving. Defendant argues that it is entitled to summary judgment under *Wickman* because the serious risk of injury or death from driving while intoxicated is foreseeable. Plaintiff argues the decedent's expectations that he could drive while intoxicated without injury were reasonable because the decedent had driven three miles without an accident, while driving at high speeds and weaving in and out of traffic prior to making his fateful turn into a building. The court cannot agree.

The hazards of driving while intoxicated are well-known. The public is reminded daily of the risks of driving while intoxicated both in warnings from the media and in motor vehicle and criminal laws. A reasonable person with the decedent's background and experience would have known that injury was highly likely to occur as a result of decedent's intentional conduct in driving while intoxicated.

Defendant also relies upon *McLain v. Metropolitan Life Ins. Co.*, 820 F.Supp. 169, 178 (D.N.J.1993), where the court upheld MetLife's denial of accidental death benefits where the insured was a habitual cocaine user and died of cardiac arrest as a result of cocaine use. In *McLain*, the district court relied on *Wickman* and found that the death was not accidental because the decedent knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of the use of cocaine. *Id.* at 178. For the same reason, MetLife's denial of benefits in the instant case was not arbitrary or capricious because decedent knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of driving while intoxicated.

Plaintiff has cited no applicable federal ERISA case in support of its argument that it was improperly denied benefits. Plaintiff relies on the Michigan Supreme Court's decision in *Collins v. Nationwide Life Ins.*, 409 Mich. 271, 278, 294 N.W.2d 194 (1980), where the court allowed recovery under an AD & D insurance policy where the insured died as a result of acute alcoholic intoxication and had a blood alcohol level of .37 percent. In *Collins*, the court ruled that a death is accidental for purposes of an accidental death policy unless the insured intended or expected his intentional conduct to have fatal consequences. *Id.* at 278, 294 N.W.2d 194. In essence, Michigan common law construes a death as accidental under an accidental insurance policy unless the decedent committed suicide. *Collins* was not an ERISA action. Moreover, its reasoning was squarely rejected by the First Circuit in *Wickman* in the context of an ERISA matter.

In *Wickman*, plaintiff made the same argument that the specific intent of the insured should control. The *Wickman* court rejected that argument for two reasons. First, the court found that if the decedent's expecta-

tions were unreasonable, as in the case of Russian roulette, it would defeat the purpose of accidental life insurance to allow recovery. Secondly, the court found that a test which focused solely on the decedent's intent would be nearly impossible to apply as it would compel the court to hypothesize and speculate. For these reasons, the *Wickman* court developed a test for determining whether an accident occurred under the terms of an AD & D policy which focuses not only on the intent of the insured, but on whether the insured's expectations were reasonable for one of the insured's background. As discussed *supra*, applying the *Wickman* standard to this case, a reasonable person in the decedent's shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death. Accordingly, MetLife's decision to deny benefits under the AD & D policy was not unreasonable and will be upheld.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that defendant's motion for summary judgment hereby is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment hereby is DENIED.