Kathleen **MULLANEY**, Plaintiff,

v.

**AETNA U.S. HEALTHCARE,**
**Defendant.**

**C.A. No. 99–0404L.**

United States District Court,
D. Rhode Island.

July 14, 2000.

Robert M. Friel, Warwick, RI, for plaintiff.

Brooks R. Magratten, Vetter & White, Providence, RI, for defendant.

## OPINION AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on cross motions for summary judgment by plaintiff, Kathleen Mullaney and by defendant, Aetna. This action was brought by Kathleen Mullaney, who claims that Aetna has wrongfully denied her the Accidental Death and Dismemberment ("AD & D") benefits owed to her by the Electric Boat Corporation Dynaflex Life Insurance and Disability Plans (the "Plans") following the death of her husband resulting from an automobile collision.

In her Amended Complaint, plaintiff has asserted one count under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B)(1994)("ERISA") for denial of benefits under the relevant plan. Defendant has moved for summary judgment. Plaintiff has also moved for summary judgment on the ERISA claim. Defendant claims that plaintiffs husband was driving while intoxicated, and there-

fore, his death does not constitute an "accident" under the terms of the Plans. Plaintiff asserts that any death that results from driving while intoxicated is not intended and, thus, is an "accident" under the Plans.

The question before this Court is whether death resulting from driving while intoxicated constitutes an accident under the federal common law that governs ERISA. This Court concludes, based on the undisputed facts of this case, that it does not. For the reasons set forth in this opinion, plaintiffs motion for summary judgment is denied, and defendants motion for summary judgment is granted.

## I. Background

The following recitation of facts is not disputed by the parties. Plaintiffs late husband, Michael J. Mullaney, was an employee of the Electric Boat Corporation, a division of General Dynamics. He obtained a Group Accidental Death & Dismemberment Policy (the "Policy") through his employer, General Dynamics, who maintained the Policy, as part of its overall Insurance Plans, for the benefit of its employees. Defendant, Aetna, served as the Claims Administrator and Group Insurer of the Policy. At the time of Mr. Mullaneys death, the Policy was in full force and effect. Plaintiff was named as beneficiary of her husbands Policy.

Shortly after midnight on October 25, 1997, Michael Mullaney was driving his 1996 GMC pick-up truck east on Ives Road in Warwick, Rhode Island. He was the sole occupant of the vehicle. Mullaneys vehicle was traveling in excess of the posted 40 m.p.h. speed limit for the area.

Mullaneys vehicle crossed the road, left the pavement, and collided with a tree on the north side of Ives Road. At the time of the incident, the pavement was dry and in excellent repair, and visibility was good. The absence of skid marks on the ground or the pavement, as well as subsequent tests performed by the police on the rear brake lights of Mullaneys vehicle, revealed that Mullaney had made no attempts to apply his brakes before striking the tree.

The collision was so severe that the vehicle's interior firewall and dashboard were pushed forward to the driver's seat. As a result of the crash, Mullaney sustained severe trauma and was pronounced dead at the scene. The autopsy revealed that the cause of death was "[m]assive [h]emorrhage [d]ue [t]o [t]ransection [o]f [the][a]orta [d]ue [t]o [b]lunt [f]orce [t]rauma." *See* Autopsy Report at 9, Mulcahy Affidavit, Ex. I. Mullaney also suffered multiple lacerations and fractures of the lower extremities and fractures of the pelvis.

The autopsy report also listed "acute ethanol intoxication" under the heading "Other Significant Findings," and a toxicology report revealed that at the time of death, Mullaney had a blood alcohol content of 370 mg/dl—nearly four times the legal limit. The medical examiner listed the cause of death as an "accident." "Accident" was also listed as the cause of death on the Medical Examiner's Certificate of Death.

Plaintiff sought to collect the amount of $50,000 which she claims is owed to her under the AD & D policy. On August 21, 1998, defendant's medical consultant wrote a memorandum analyzing the evidence relating to plaintiff's claim. He concluded that plaintiff's husband had been legally intoxicated at the time of the accident. He also noted that, in a person with a blood alcohol level approximating that of Mr. Mullaney, the symptoms that would have been present were "approaching loss of motor functions, markedly decreased response to stimuli, marked muscular incoordination, inability to walk or stand, vomiting, incontinence, impaired consciousness, sleep or stupor." *See* Interoffice Communication from Bartenstein to Mulcahy, Mulcahy Affidavit, Ex. J. Defendant's medical consultant concluded that "acute alcohol intoxication appears to have been a

contributing factor" in the motor vehicle incident in which Mullaney died. *Id.*

In a tactless letter containing unnecessarily lurid details regarding Mr. Mullaney's condition at the time of his death, defendant informed plaintiff that her claim for benefits had been denied. The letter stated: "As a responsible individual, Mr. Mullaney should have been aware of the fact that his alcohol consumption impaired his ability to operate ... his vehicle. In his attempt to drive while intoxicated, he eliminated the elements of an accident from his death." Letter from Mulcahy to Mullaney of Sept. 11, 1998 at 2, Mulcahy Affidavit, Ex. K.

This letter defined an "accident" as "an unusual, fortuitous, unexpected or unlooked for event occurring by chance or arising from unknown causes" and stated that "an injury is considered accidental if it was not reasonably foreseeable by the insured person." *Id.* This definition is contained nowhere in the Plan documents or in the Summary Plan Description (SPD) given to plaintiff.

The document given to plaintiff states only that "benefits will be paid only if the loss results directly from accidental bodily injuries and occurs within 90 days after the date of the accident which caused the loss." Summary Plan Description at 9, Mulcahy Affidavit, Ex. A. The SPD goes on to state that "no benefits are paid on account of a loss caused or contributed to by" one of four specific exclusions:

1. bodily or mental infirmity, or medical or surgical treatment not made necessary by injuries covered under the plan.
2. disease, ptomaines, bacterial infections.
3. suicide or any attempt thereat, whether sane or insane, or intentionally self-inflicted injuries.
4. war or any act of war ... including resistance to armed aggression.

*Id.* at 10.

On October 21, 1998, plaintiff requested in writing an administrative review of Aetna's decision. In a letter dated November 11, 1998, defendant wrote plaintiff's lawyer informing him that the claim was being reviewed. On November 17, 1998, Mary Ellen Kinney, Aetna's senior medical consultant, wrote Tom Mulcahy, Sr., Investigative Analyst, that she had reviewed the records submitted and that she concurred with the original analysis. On December 18, 1999, defendant wrote to plaintiff stating:

> [O]ur (MUD)[Medical Underwriting Department] advised that the blood alcohol level of 370 mg/dl in the toxicological results, found at the time of death, indicates marked intoxication on the part of the deceased, which produces impaired consciousness, stupor and unconsciousness. This state would have severely impaired Michael J. Mullaneys sensory, motor and cognitive ability to operate his vehicle safely. Therefore, based upon our second review, we do not feel that this insureds death qualifies for Accidental Death benefits.

Letter from Wakeman to Friel of December 18, 1998, Mulcahy Affidavit, Ex. O.

On or about August 4, 1999, plaintiff filed a complaint in the Rhode Island Superior Court sitting in Kent County. On August 20, 1999, defendant removed the action to this Court because it implicated ERISA.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The crucial question thus becomes whether a genuine issue of material fact exists.

"Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Morrissey*, 54 F.3d at 31. Summary judgment is only available when there is no dispute of material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996), *aff'd sub nom. Mills v. State of Maine*, 118 F.3d 37 (1997). The coincidence that both parties move simultaneously for summary judgment does not relax the standards under Rule 56. *See Blackie*, 75 F.3d at 721. Barring special circumstances, the District Court must consider each motion separately, drawing inferences against each movant in turn. *Id.* (quoting *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 n. 8 (1st Cir.), *cert. denied*, 516 U.S. 814, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995)). In this case all the material facts are undisputed.

## III. Decision

### A. De novo or "arbitrary and capricious" standard of review

The standard of review in this case is de novo. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a de novo standard of review is appropriate when interpreting an ERISA plan "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." When the plan administrator or fiduciary possesses such power, the appropriate standard of review is the "arbitrary and capricious" standard. *See Grady v. Paul Revere Life Ins. Co.*, 10 F.Supp.2d 100, 110 (D.R.I.1998). Review under this standard is deferential. *See Firestone*, 489

U.S. at 111, 109 S.Ct. 948. Because the plan at issue in this case does not specifically grant discretionary authority to the plan administrator, review in this case will be de novo.

### B. ERISA Claim

The crux of this case turns on the meaning of "accident." Plaintiff makes two arguments. Plaintiff first contends that her husband's death falls within the clear and unambiguous language of the Policy, which states that benefits are to be paid for death and dismemberment. Specifically, plaintiff cites the language from the Plan documents:

If an employee suffers a bodily injury caused by an accident and as a direct result of such injury and, to the exclusion of all other causes, sustains within not more than ninety days after the date of the accident which causes such injury any of the losses listed in the Table of Benefits in this section, then, provided:

(a) the injury occurs while insurance is in force for the employees under this Title; and

(b) the loss resulting from the injury is not excluded from coverage in accordance with Section 2 of this Title;

the Insurance Company shall, subject to the terms of this policy, pay a benefit in the amount provided for such loss in said Table of benefits....

Mulcahy Affidavit, Ex. B at 6–ADDC Continued.

Plaintiff argues that her husband "suffer[ed] a bodily injury caused by an accident" and died as a result. In support of her claim, she cites the medical examiner's determination of "accident" as the cause of death. Plaintiff notes that the insured's policy includes no definition of "accident," nor does she provide one herself. Secondly, plaintiff argues that her husband's death should be covered by defendant's AD & D policy, because the circumstances of his death do not fall within any of the four specifically enumerated exclusions

that automatically bar recovery on a Death and Dismemberment claim.

In response, defendant argues that the death of plaintiff's husband was not an accident. In so concluding, it relies on its own definition of the word "accident"—"an unusual, fortuitous, unexpected or un-looked for event occurring from chance or arising from unknown causes . . . an injury is considered accidental if it was not rea-sonably foreseeable by the insured per-son." Letter from Mulcahy to Mullaney of Sept. 11, 1998 at 2, Mulcahy Affidavit, Ex. K. Defendant argues that both the SPD given to policy holders and the Plan condi-tion payment of AD & D benefits on the participant suffering an injury arising from an accident as defined above. Thus, in Mr. Mullaney's case, defendant contends, benefits should only be paid if the in-sured's death was a matter of chance or arose from remote or unknown causes. Defendant argues that because Mr. Mulla-ney drove over the speed limit with an extremely high blood alcohol level, his death or injury was a practical certainty. In defendant's view, Mr. Mullaney's "voli-tional acts of drinking and then driving removed his death from the realm of chance or unknown or remote causes." Defendant's memo., p. 20.

Plaintiff's first argument—that her husband's death was an "accident" because the medical examiner so deemed it in his report—is easily dispensed with. The por-tion of the certificate of death in which cause of death is to be noted provided the medical examiner with four selections from which to choose: "accident," "suicide," "homicide," and "undetected." *See* Medi-cal Examiner Certificate of Death, Mul-cahy Affidavit, Ex. D. Since the medical examiner had no difficulty in detecting the cause of the insured's death, he was left with three choices. Mr. Mullaney's death was clearly not a homicide, and there was no evidence to suggest it was a suicide. "Accident," therefore, was the only catego-ry even remotely applicable to Mr. Mulla-ney's death. However, the medical exam-iners determination of "accident" does not mean that Mr. Mullaney's "accident" was of the sort contemplated by defendant or described in the Plan.

The larger and more important question, therefore, is whether or not the insured's death was an "accident" within the mean-ing of the policy issued by defendant. If the language of an ERISA-regulated in-surance policy is clear and unambiguous, then the language must be given its plain and ordinary meaning. *See Burnham v. Guardian Life Insurance Company of America,* 873 F.2d 486, 489 (1st Cir.1989). It is clear, however, that the word "acci-dent," when used in the context of an insurance policy, does not have a plain and ordinary meaning.

In the years predating ERISA and in the early years following its passage, fed-eral courts relied on state law for a defini-tion of the words "accident" and "acciden-tal." Federal courts now look to federal common law in determining such issues. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The older cases typically defined "accident" as something unintended and unforeseen. Thus, if the deceased did not intend for his actions to lead to his death, or if he did not foresee death or serious injury as a result of his actions, the result-ing injury or death was commonly deemed an "accident."

Plaintiff cites primarily to state law cases, many of them pre-ERISA, to bol-ster her claim that her husband's death was an "accident." Most of those cases adopt the view that anything that is nei-ther intended nor foreseen is an accident. *See Russell v. Citicorp Life Ins. Co.,* No. CV 940540013S, 1997 WL 781971, at *5 (Conn.Super.)(holding death by acute etha-nol poisoning and morphine toxicity is an accident and not suicide if insured did not know such a combination was likely to cause death); *Bruce v. Cuna Mutual In-surance Society,* 219 Mich.App. 57, 555 N.W.2d 718, 720 (1996), *appeal denied,* 456 Mich. 877, 569 N.W.2d 168 (1997)(holding

death from alcohol poisoning does not involve intentionally self-inflicted injury and is thus not excluded from accident coverage); *Vallejos v. Colonial Life and Accident Insurance Co.*, 91 N.M. 137, 571 P.2d 404, 406 (1977)(holding that death from injection of narcotics without intent to commit suicide is accidental).

In one such case, *USA Life One Insurance Company of Indiana v. Nuckolls*, 682 N.E.2d 534 (Ind.1997), the insured son of the named beneficiaries died when he fell asleep in his car while smoking a cigarette. Carbon monoxide poisoning "with the contributing cause of 'acute blood alcohol level of .294%' " was listed as the cause of death. *Nuckolls*, 682 N.E.2d at 537. The insurance company argued that the beneficiaries should be precluded from recovery because the deceased's "voluntary act of drinking was a contributing factor ... [and] impaired his ability to escape from the burning car and reduced the level of carbon monoxide necessary for death." *Id.* at 540. The Court held that, regardless of the volition of deceaseds actions, "his intoxication did not prevent him from being covered." *Id.* at 541. In reaching this decision, the Court relied on a body of case law that posits that " 'reasonable foreseeability' is not the proper test to determine whether a death was accidental under these policies; instead, coverage is excluded only if the policy holder intentionally acted such that he expected death." *Id.* at 540, n. 1.

In another such case, *Union Central Life Insurance Company v. Cofer*, 103 Ga. App. 355, 119 S.E.2d 281, 284–85 (1961), the Court held that the fact that the insured died from injuries sustained while driving while intoxicated did not bar recovery on the double indemnity provisions of his life insurance policy. Specifically, the Court found:

> that the death of the plaintiff's husband was not suicidal, that the death of the insured Cofer resulted directly, independently and exclusively of all other causes from bodily injury which injury was evidenced by visible contusion or wound on the exterior of the body of Cofer. These two admissions standing alone practically, if not completely eliminated any question but that Cofer met his death by accident or accidental means ...

*Cofer*, 119 S.E.2d at 284–85.

The analysis in the cases cited by plaintiff is clearly flawed. All of those cases turn on the question of intent or foreseeability. If injury or death as the result of an action is neither foreseen nor intended, then the resulting injury or death is deemed an accident. Such a standard critically changes the meaning of the word "accident." Following such reasoning, any action short of suicide would have to be deemed an accident. In addition, in considering whether or not the fateful consequences of an accident were foreseen, many courts applied a subjective test—if the actor did not foresee the results of his actions, his fate was ruled an accident. Little attention was given to objective standards and the question of whether or not a "reasonable person" in the actors position would have foreseen the ultimate outcome of the action.

The benefit provisions of an ERISA regulated program must be interpreted under principles of federal substantive law. *Pilot Life Ins. Co.*, 481 U.S. at 56, 107 S.Ct. 1549. In the years following the passage of ERISA, a substantial body of federal common law has arisen that directly addresses the meaning of "accident" and has come to apply a subjective/objective standard in determining what constitutes an "accident." The first case to tackle decisively the "metaphysical conundrum of what is an accident" in terms of federal common law was *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077, 1084 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). *Wickman* establishes a workable standard for determining which acts and occurrences fall within the realm of "accident" and which do not.

In *Wickman,* plaintiff sued after she was denied accidental death benefits following her husband's death. Plaintiff's husband had climbed over a guardrail on a highway overpass and hung by one hand from the rail over railroad tracks forty to fifty feet below. Plaintiff's husband fell to the tracks below and died later that evening.

The life insurance company refused to pay AD & D benefits to the widow, noting that it did not pay benefits if the death was the result of suicide or self-inflicted injury. Plaintiff denied that her husband had committed suicide or intended to harm himself and insisted that his death was accidental. A United States Magistrate Judge ruled that "[the deceased] knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of his volitional act of placing himself outside of the guardrail and hanging on with one hand." *Wickman,* 908 F.2d at 1081. That ruling was appealed.

In reviewing the case, the First Circuit established a subjective/objective test to be used in determining what constitutes "accidental" death. The *Wickman* test for determining whether or not an occurrence constitutes an "accident" is a three-pronged one. First, one must consider "the reasonable expectations of the insured when the policy was purchased." *Id.* at 1088. Second, if the insured did *not* expect an injury similar to that suffered, the fact-finder must then ask whether the insured's expectation was reasonable. *See id.* This requirement, the Court stated, "will prevent unrealistic expectations from undermining the purpose of accident insurance." *Id.* In other words, if the insured's belief is unreasonable, then the injury will not be considered an accident. Third, if the fact-finder cannot determine the insured's subjective expectation, the fact-finder must then ask "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional con-

duct." *Id.* Once again, if a reasonable person would have expected the injury to occur as a result of the insured's actions, then the resultant injury is not an accident. "This finding equates with a determination either that [the deceased] expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable." *Id.* at 1089.

To further illustrate this proposition, the Court in *Wickman* used the example of the "game" of Russian roulette, which is played by pointing a revolver with a bullet loaded in one chamber at the player's head, spinning the barrel, and pulling the trigger. The players in such "games" neither intend nor expect to be killed. For them, the "game" is merely a daring pastime, and each player seemingly "entertain[s] a fanciful expectation that fate [will] inevitably favor them." *Wickman,* 908 F.2d at 1087. Nevertheless, when deaths do occur in the course of these "games," courts have routinely held that "the 'insureds' deaths in these cases, regardless of actual expectation or intention, were not accidental." *Id.*

Although the facts of *Wickman* do not involve driving while intoxicated, the test which *Wickman* establishes can be applied to cases of drunk driving. Several courts, recognizing the applicability of the *Wickman* test in such cases, have utilized it in their analysis and have found that death resulting from such activity not to be accidental. For example, in *Cozzie v. Metropolitan Life Insurance Company,* 140 F.3d 1104 (7th Cir.1998), plaintiff sued for recovery of life insurance benefits after her husband was killed as a result of driving while intoxicated. Defendant denied plaintiff's claim and interpreted "accident" as an event "not 'reasonably foreseeable.' " *Cozzie,* 140 F.3d at 1109. The Seventh Circuit, applying *Wickman,* found that even "[i]f the insured did not believe that the result would occur, we must consider whether such an estimation can be considered reasonable. If the expectations of

the insured were objectively unreasonable, then injuries or death resulting therefrom are not accidental." *Id.* at 1110. The Seventh Circuit concluded that "in light of the reasoning underlying the definition, it cannot be said that MetLife's definition of 'accident' is downright unreasonable." *Id.*

In *Walker v. Metropolitan Life Insurance Company,* 24 F.Supp.2d 775 (E.D.Mich.1997), another case that applies the *Wickman* standard, defendant Metropolitan Life denied benefits to the beneficiary of a man killed as a result of driving while intoxicated. In *Walker,* plaintiff argued that the insured's death was an accident because he did not intend or expect to be injured or to die as a result of his drunk driving. *Walker,* 24 F.Supp.2d at 781. The Court in *Walker* found that "[t]he hazards of driving while intoxicated are well-known. The public is reminded daily of the risks of driving while intoxicated both in warnings from the media and in motor vehicle and criminal laws." *Id.* The Court thus held that "a reasonable person in the decedents shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death." *Id.* at 782.

Other courts have also held that death or serious injury resulting from driving while intoxicated is not "accidental." *See Cates v. Metropolitan Life Insurance Co. Inc.,* 14 F.Supp.2d 1024, 1027 (E.D.Tenn. 1996), *aff'd,* 149 F.3d 1182 (6th Cir.1998)(holding it is not unreasonable to conclude that driving while intoxicated made the possibility of injury or death reasonably foreseeable and thus not accidental); *Schultz v. Metropolitan Life Insurance Co.,* 994 F.Supp. 1419, 1421 (M.D.Fla.1997)("While [the decedent] did not intend to die, his expectations were unreasonable given his condition. It is just common sense that a driver whose faculties are significantly impaired by alcohol, or drugs, or both, risks his life as well as others.").

■ Applying the rule of *Wickman* this Court holds that Mr. Mullaney's death cannot be deemed an accident. Mr. Mullaney was driving at night at an excessive rate of speed, conditions that alone would have rendered his actions unsafe. In addition, Mr. Mullaney, on the evening in question, had consumed enough alcohol to give him a blood alcohol level of nearly four times the legal limit. At this level of intoxication, Mr. Mullaney had little control over his physical or mental faculties, and so little control of his vehicle that he did not even attempt to apply the brakes.

Even if it be assumed that Mr. Mullaney himself may not have intended or foreseen any harm in attempting to drive while grossly intoxicated, a reasonable person surely would have known that such conduct would likely result in serious bodily harm or death. Mr. Mullaney's actions clearly fail the *Wickman* test, and his death cannot be considered "accidental." Therefore, Aetna was justified in denying AD & D benefits to plaintiff.

■ As a last gasp, plaintiff argues that defendant should pay the benefits in question because death resulting from driving while intoxicated was not one of the exclusions specifically enumerated in the SPD and the Plan itself. In essence, plaintiff contends that defendant's failure to specifically exclude death resulting from driving while intoxicated implies that such an occurrence is covered under the terms of the main Plan because "[h]ad the Policy intended to exclude intoxication as an excluded risk, it could have done so." Plaintiffs memo., p. 6.

■ That reasoning is faulty. It is a long established tenet of insurance law that coverage under an insurance policy extends only to those risks that are *included* in the coverage provision of the agreement. "The doctrine of implied waiver and of estoppel, based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks not covered by its terms." 43 Am.Jur.2d *Insurance* § 465 (1982). Exclusion clauses limit the scope of the coverage granted,

but they do not in and of themselves grant coverage. *See Couch on Insurance 3d* § 22:30 n. 49. Thus, failure to exclude an act from coverage does not automatically mean that the act is covered by the policy. Furthermore, there is no need to resort to an examination of policy exclusions where the requirement of an "accident" is a clearly and unambiguously expressed condition of coverage in the granting clause. Since this Court has held that decedent's death was not accidental there is no need for an analysis of the policy exclusions.

Finally, although not briefed by the parties, more than one court has held that driving while intoxicated can bar recovery under an insurance policy even when intoxication is not specifically excluded by the policy. Those courts have relied on other language in the policy exclusions to prevent recovery for deaths or injuries sustained while driving while intoxicated. For example, in *Nelson v. Sun Life Assurance Company of Canada*, 962 F.Supp. 1010 (W.D.Mich.1997), plaintiff tried to collect AD & D benefits under the policy. The policy did not contain an exclusion for intoxication. It did contain an exclusion for self-inflicted injury. The Court found that "the voluntary consumption of alcohol" impaired the insured's judgment and the ability to control his vehicle. *Nelson*, 962 F.Supp. at 1013. As a result, the Court held that "[the insured] intentionally inflicted an 'injury of a chemical nature, depressing the bodily functions.'" *Id.* The Court, therefore, concluded that, despite the absence of an exclusion for intoxication, the application of the policy's "'self-inflicted injuries' exclusion [was] eminently reasonable." *Id.; see also Fowler v. Metropolitan Life Insurance Company*, 938 F.Supp. 476, 480 (W.D.Tenn.1996)(same).

The policy here does not contain an exclusion for intoxication, but it does contain exclusions for "intentionally self-inflicted injuries" and "bodily or mental infirmity." Summary Plan Document at 10, Mulcahy Affidavit, Ex. A. Following the logic of the *Nelson* court, any injuries or death resulting from driving while intoxicated can be classified as "intentionally self-inflicted." Thus, under the exclusions that are expressly included in the policy, plaintiff fails to qualify for benefits as the result of her late husbands actions.

### Conclusion

This Court holds that death resulting from driving while intoxicated does not constitute an accident because it is reasonably foreseeable that death or serious bodily harm will result therefrom. For the foregoing reasons, defendant's motion for summary judgment on the Amended Complaint is granted. Plaintiff's motion for summary judgment on the Amended Complaint is denied. The Clerk shall enter judgment for defendant forthwith.

It is so ordered.