PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHELE ECKELBERRY, in her
capacity as beneficiary,
　　　　　　　*Plaintiff-Appellee,*

v.

RELIASTAR LIFE INSURANCE COMPANY,
　　　　　　　*Defendant-Appellant.*

⎱
⎰ No. 06-1020

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Joseph Robert Goodwin, District Judge.
(CA-04-1185-6)

Argued: September 19, 2006

Decided: November 17, 2006

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

---

Reversed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Motz and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Bradley J. Betlach, HALLELAND, LEWIS, NILAN &
JOHNSON, P.A., Minneapolis, Minnesota, for Appellant. Charles
Edward McDonough, WISEMAN LAW FIRM, Vienna, West Vir-
ginia, for Appellee. **ON BRIEF:** Todd Wiseman, WISEMAN LAW
FIRM, Vienna, West Virginia, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

Earl Eckelberry died after his vehicle crashed into the back of a parked tractor trailer. His ex-wife, Michele Eckelberry, sought accidental death benefits from ReliaStar Life Insurance Company, Eckelberry's insurer. ReliaStar denied the claim. Under the terms of the Plan, injuries are part of an "accident" only if they are "unexpected" and "the insured does not foresee" them. ReliaStar reasoned that because Eckelberry's blood-alcohol level was 50 percent higher than the legal limit, he knowingly put himself at risk for serious injury or death, and his injuries were therefore not "unexpected."

Ms. Eckelberry argued that ReliaStar's denial of benefits was unreasonable because, viewed subjectively, Eckelberry did not expect to crash, and because serious injury was not "highly likely." The district court agreed, reversing the Plan administrator's denial of benefits, and granting Ms. Eckelberry's motion for summary judgment. Because we conclude that ReliaStar's interpretation of "accident" was not unreasonable, we must reverse the judgment of the district court.

I.

On March 19, 2004, Earl Eckelberry was traveling east on U.S. Route 50 near Parkersburg, West Virginia. A tractor trailer, also facing east, was parked eight feet south of the pavement edge on the highway berm. At approximately 3:49 a.m., Eckelberry lost control of his vehicle and ran headlong into the rear of the parked trailer. His blood-alcohol level was 0.15 percent — 50 percent higher than the legal limit of 0.10 percent. *See* W. Va. Code § 17C-5-2 (2004). At the time of the collision, Eckelberry was not wearing a seat belt. He was thrown from his vehicle and died of multiple traumatic injuries.

Plaintiff Michele Eckelberry is the named beneficiary of the Accidental Death and Dismemberment ("AD&D") insurance policy provided to Earl Eckelberry by his employer, Ames True Temper, Inc. ReliaStar insured the Plan and also acted as claims administrator. Under the terms of the Plan, ReliaStar will pay accidental death bene-

fits if the insured dies "due to an accident." The Plan defined "accident" as "an unexpected and sudden event which the insured does not foresee." The Plan also provided that "ReliaStar Life has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance."

On March 31, 2004, plaintiff filed an $86,000 claim for accidental death benefits with ReliaStar. ReliaStar's claims handler analyzed the Traffic Crash Report, the Toxicology Report, the Medical Examiner's Report, and the Death Certificate. ReliaStar then denied the claim on the ground that, because Eckelberry's blood-alcohol level was 50 percent higher than the legal limit, his injuries were not "unexpected" as required by the Plan's definition of "accident." ReliaStar's Appeals Committee affirmed, finding that Eckelberry had "put himself in a position in which he should have known serious injury or death could occur." By driving under the influence, he "knowingly pu[t] [him]sel[f] at risk for serious injury or death." Accordingly, his death was not "unexpected" as required by the Plan.

Plaintiff filed suit in state court under state law claiming that ReliaStar had wrongfully denied benefits and seeking declaratory relief. ReliaStar removed to federal district court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (2000)("ERISA"). The district court reversed ReliaStar's benefits determination and, in granting summary judgment to plaintiff, held that ReliaStar had unreasonably interpreted the Plan's definition of "accident." Specifically, the court found that ReliaStar's interpretation ran afoul of the clear language of the policy, the federal common law definition of accident, and the goals of the Plan. *Eckelberry v. ReliaStar Life Ins. Co.*, 402 F.Supp. 2d 704 (S.D. W. Va. 2005).

ReliaStar appeals.

## II.

We review the district court's summary judgment ruling *de novo*, applying the same legal standard used by the district court. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127-28 (4th Cir. 1987). As the parties agree, where an ERISA plan vests the administrator with

"discretionary authority to determine eligibility for benefits or to construe the terms of the plan," as this Plan does, courts review an administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Baker v. Provident Life & Accident Ins. Co.*, 171 F.3d 939, 941 (4th Cir. 1999). Under this standard, we do not search for the best interpretation of a plan or even for one we might independently adopt. Rather, when reviewing a plan administrator's decision, a court "will not disturb any reasonable interpretation." *Baker*, 171 F.3d at 941 (citation omitted). Where a potential conflict of interest exists, however, we employ a more searching review; the deference due the plan administrator is "lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 87 (4th Cir. 1993) (citing *Restatement (Second) of Trusts* § 187 cmt. d (1959)). Here, because the plan administrator, ReliaStar, also acts as insurer, we review its denial under this modified abuse of discretion standard. *Baker*, 171 F.3d at 941.

When interpreting the benefits provisions of ERISA-regulated insurance plans, the plain language is paramount. *Id.* at 942; *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 57-58 (4th Cir. 1992). We begin, therefore, with the Plan's terms. The Plan states that ReliaStar pays accidental death benefits if the insured dies "due to an accident."

The Plan defines "accident" as "an unexpected and sudden event which the insured does not foresee," so to qualify under the Plan an accident must be both "unexpected" and an event "the insured does not foresee." ReliaStar's Plan does not, however, define "unexpected" or "foresee[able]." Because the Plan's undefined terms and indeed the term "accident" are not always susceptible to easy application, many federal courts have adopted the framework laid out in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990), to clarify the meaning of "unexpected." Initially, the court asks whether the insured subjectively expected his actions to result in injury or death. *Id.* at 1088. If the insured "did not expect an injury," the fact-finder must "examine whether the suppositions which underlay that expectation were reasonable" and must do so "from the perspective of the insured." *Id.* However, "if the fact-finder, in attempting to accurately determine the insured's actual expectation,

finds the evidence insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations." *Id.* (citation omitted). This "objective analysis" asks "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* (citation omitted).

In *Baker v. Provident Life & Accident Insurance Co.*, 171 F.3d 939, 942-43 (4th Cir. 1999), this court suggested that it would apply *Wickman*'s test to drunk driving collisions. Here, as in *Wickman*, there is no evidence in the administrative record from which "the insured's subjective expectation" can be "accurately determined." *Wickman*, 908 F.2d at 1088. Thus, again as in *Wickman*, we proceed to the "objective analysis," and consider "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* (citation omitted).

### III.

ReliaStar denied benefits on the ground that the insured's death was not "unexpected" because he "put himself in a position in which he should have known serious injury or death could occur." Plaintiff contends, however, that it was unreasonable for ReliaStar to conclude that the particular collision at issue here was not an "accident." Specifically, plaintiff maintains that she is entitled to accidental death benefits because (1) drunk-driving injuries are not "highly likely" to occur; and (2) ReliaStar's interpretation of "accident" would "frustrate the purpose of AD&D insurance."

### A.

Plaintiff first argues that ReliaStar's interpretation of "accident" was unreasonable because drunk-driving injuries are not "highly likely" to occur. We cannot agree with plaintiff's argument. Whether the test is one of high likelihood,[1] or reasonable foreseeability,[2] fed-

---

[1] Courts have used a number of different formulations to describe the objective portion of the *Wickman* inquiry. The following are best classi-

eral courts have found with near universal accord that alcohol-related injuries and deaths are not "accidental" under insurance contracts governed by ERISA. *See, e.g.*, *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109-10 (7th Cir. 1998); *Weatherall v. ReliaStar Life Ins. Co.*, 398 F.Supp. 2d 918, 924 (W.D. Wis. 2005); *Mullaney v. Aetna U.S. Healthcare*, 103 F.Supp. 2d 486, 494 (D.R.I. 2000); *Sorrells v. Sun Life Assurance Co.*, 85 F.Supp. 2d 1221, 1232-35 (S.D. Ala. 2000); *Walker v. Metro. Life Ins. Co.*, 24 F.Supp. 2d 775, 782 (E.D. Mich. 1997); *Schultz v. Metro. Life Ins. Co.*, 994 F.Supp. 1419, 1422 (M.D. Fla. 1997); *Nelson v. Sun Life Assurance Co.*, 962 F.Supp. 1010, 1012 (W.D. Mich. 1997); *Miller v. Auto-Alliance Int'l, Inc.*, 953 F.Supp. 172, 176-77 (E.D. Mich. 1997); *Cates v. Metro. Life Ins. Co.*, 14 F.Supp. 2d 1024, 1027 (E.D. Tenn. 1996), *aff'd*, 149 F.3d 1182 (6th Cir. 1998); *Fowler v. Metro. Life Ins. Co.*, 938 F.Supp. 476, 480 (W.D. Tenn. 1996).

---

fied as requiring a standard akin to "highly likely." *See, e.g.*, *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1127 (9th Cir. 2002) (holding insured's death by autoerotic asphyxiation was "accidental" because a reasonable person would not have viewed death as "substantially certain" to result); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1456 (5th Cir. 1995) (same); *Walker v. Metro. Life Ins. Co.*, 24 F.Supp. 2d 775, 782 (E.D. Mich. 1997) (holding insured's drunk driving death was not "accidental" because a reasonable person would have viewed serious injury or death as "highly likely to result"); *see also Wickman*, 908 F.2d at 1080, 1088-89 (holding insured's death by forty foot fall was not "accidental" because a reasonable person "would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct").

[2]*See Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109-10 (7th Cir. 1998) (upholding plan administrator's interpretation of "accident" as an event that is not "reasonably foreseeable"); *see also King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 1002 (8th Cir. 2005) (discussing objective standard in terms of both reasonable foreseeability and high likelihood); *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004) (discussing objective standard in terms of insured's "objectively reasonable" expectations); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1147 (11th Cir. 2001) (same); *Baker*, 171 F.3d at 942-43 (discussing objective standard in terms of "reasonabl[e] foreseeab[ility]"); *see also Wickman*, 908 F.2d at 1089 (discussing objective standard in terms of what plaintiff "reasonably should have expected").

These courts have applied the objective foreseeability test set forth in *Wickman* and reasoned that since "the hazards of drinking and driving are widely known and widely publicized" the insured should have known that driving while intoxicated was highly likely to result in death or bodily harm. As one district court put it, "All drivers know, or should know, the dire consequences of drunk driving. Thus, the fatal result that occurred in this case should surprise no reasonable person." *Nelson*, 962 F.Supp. at 1012. Ordinarily, "a death that occurs as a result of driving while intoxicated . . . is not an 'accident' because that result is reasonably foreseeable." *Baker*, 171 F.3d at 942; *see also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004) ; *Cozzie*, 140 F.3d at 1109-10; *Wickman*, 908 F.2d at 1089 (holding that an injury is not accidental if "a reasonable person in [the insured's] shoes would have expected the result.").

In *Cozzie v. Metropolitan Life Insurance Co.*, the Seventh Circuit applied the *Wickman* framework to a similar claim for accidental death benefits resulting from driving under the influence. 140 F.3d at 1110. The insured there missed a curve in the road and was killed in a single-car crash — his blood-alcohol concentration was 0.252 percent, over twice the legal limit. *Id.* at 1106. The ERISA plan at issue did not define "accident." *Id.* at 1109. The Seventh Circuit nevertheless upheld the plan administrator's denial of benefits, finding that the administrator's interpretation of "accident" — an event that is not "reasonably foreseeable" — was not unreasonable. *Id.* at 1108, 1111.

We do not understand ReliaStar to have applied a per se rule to Eckelberry's case. The simple fact that drunk driving occurred does not mean there was no accident under the policy. If the insurer did not intend to cover any injury to a drunk driver, then drunk driving would have been a specific exclusion listed in the plan. Rather, ReliaStar's determination that "Eckelberry's death was not unexpected because he put himself in a position in which he should have known serious injury or death could occur" finds considerable support in the record.

Both the facts and the inferences that could reasonably be drawn from them remain uncontradicted by any evidence submitted on Eckelberry's behalf. As the Wood County Sheriff's report makes clear, Eckelberry's car crash was perfectly consistent with his inebriated state. While under the influence of alcohol, Eckelberry lost control of

his vehicle at 3:49 a.m. and ran headlong into a parked semi-trailer located eight feet beyond the highway shoulder. He was not wearing a seat belt. Most critically, Eckelberry's blood-alcohol concentration was 0.15 percent — 50 percent higher than the legal limit. According to the toxicology report issued by West Virginia's Office of Chief Medical Examiner, the "[t]ypical effects" of a blood-alcohol concentration of 0.15 percent include "blurred vision, loss of motor coordination and impaired judgment."

Every state criminalizes drunk-driving. Under West Virginia law any person who drives a vehicle with a blood-alcohol level in excess of the legal limit is guilty of a misdemeanor and, upon conviction for a first offense, shall be fined not less than $100 and sentenced to a jail term of up to six months. W. Va. Code § 17C-5-2(d)(E)(2). A person convicted of violating § 17-C-5-2(d)(E) for the second time is also guilty of a misdemeanor and sentenced to a jail term of six to twelve months. *Id.* § 17C-5-2(j). A third-time offender is guilty of a felony and, upon conviction, sentenced to a state prison term of one to three years. *Id.* § 17C-5-2(k). These graduated penalties, and the degree to which they increase according to the number of prior offenses, reflect a recognition of the seriousness of the problem of drunk drivers which is far beyond that of most other driving infractions.

Moreover, at the time of Eckelberry's collision, no state in the country had a legal limit approaching 0.15 percent. Gregory T. Neugebauer, *Alcohol Ignition Interlocks: Magic Bullet or Poison Pill*, 2 U. Pitt. J. Tech. L & Pol'y 2, 2 (2002) (noting that in 2002 every state had a blood-alcohol limit of 0.10 percent or less). West Virginia's legal limit was 0.10 percent. *See* W. Va. Code § 17C-5-2. Plaintiff thus cannot be heard to claim that a reasonable person would be unaware of the dangers of driving under the influence of significant alcohol consumption.

To assess whether "a reasonable person in [the insured's] shoes would have expected the result," *Wickman*, 908 F.2d at 1089, ReliaStar was entitled to take into account the substantial criminal consequences that often attach to an insured's decision to drive while intoxicated. These criminal laws stem, in part, from the fact that driving under the influence threatens not only the life of the impaired

driver, but also the lives of other motorists. *See Baker*, 171 F.3d at 941 (inebriated driver convicted of involuntary manslaughter after killing another motorist). As West Virginia's highest court has noted, "operating an automobile while under the influence is reckless conduct that places [West Virginia citizens] at great risk of serious physical harm or death." *State ex rel. Appleby v. Recht*, 583 S.E.2d 800, 813 (W. Va. 2002) (quotation omitted).

Embracing Eckelberry's broad view of accident would eliminate the distinction this court has long recognized between intended and highly likely consequences. *See, e.g.*, *Baker*, 171 F.3d at 942-43. Russian Roulette, an archetype of the unreasonable forecast, provides a useful paradigm. To be sure, while an insured may not intend to die when he places a single cartridge into a pistol, spins the cylinder, places the gun to his forehead, and pulls the trigger, such a result is not just an unfortunate accident. *See Wickman*, 908 F.2d at 1087. Similarly, out of a desire to avoid being shot, burglars typically choose empty homes to rob. But if an armed occupant is indeed home, we would not regard the burglars being shot as an "accident" in the same way we would treat a misfire at the shooting range. Likewise, even if Eckelberry did not intend to crash his car into a parked semi-truck, that intention does not alone render a result "accidental." To put it simply, unjustifiable optimism about one's odds (or failure even to calculate them) does not relieve conduct such as Eckelberry's of foreseeable results.

In sum, we are hard pressed to say that a death must be deemed accidental where a decedent voluntarily gets behind the wheel after voluntarily drinking too much. By choosing to drive under circumstances where his vision, motor control, and judgment were likely to be impaired, the insured placed himself and fellow motorists in harm's way. To characterize harm flowing from such behavior as merely "accidental" diminishes the personal responsibility that state laws and the rules of the road require. This case, in short, affords us no basis for concluding that ReliaStar's denial of benefits was unreasonable.

### B.

Plaintiff also argues that ReliaStar's interpretation of "accident" is contrary to the goals of the Plan because it would "frustrate the pur-

pose" of AD&D insurance by taking the "accident" out of accident. Again, we disagree. While we are not unsympathetic to the fact that the claimant in this case may be denied recovery, an ERISA fiduciary must also provide for future applicants. Indeed, where a plan administrator denies an unmeritorious claim, the financial health of pooled plan assets is protected, not "frustrate[d]." *See Cozzie*, 140 F.3d at 1110. As the Seventh Circuit has noted, the purpose of AD&D insurance is to provide "against the tragedy of *unexpected* death." *Id.* (emphasis added). We cannot characterize as incompatible with the Plan, therefore, ReliaStar's determination that the Plan's best interests are served by limiting the Plan's definition of "accident" to "unexpected" events that are not highly likely to occur. Nor can we say that it is unreasonable for plan administrators to acknowledge the difference between ultra-hazardous drunk-driving deaths and other tragedies which do not "involve such a significant assumption of a known risk by the insured." *See id.*

IV.

Finally, we emphasize the boundaries of our holding. We do not suggest that plan administrators can routinely deny coverage to insureds who engage in purely negligent conduct or, for example, to anyone that speeds. In fact, accident insurance is often purchased to cover negligence at its most typical: Insureds seek "protection from their own miscalculations and misjudgments." *Wickman*, 908 F.2d at 1088 (citations omitted). In this regard, the district court's comparison of those who drive drunk to those who apply lipstick, fiddle with the radio dial, or restrain a child is inapt. *See Eckelberry*, 402 F.Supp. 2d at 712. While these actions are hardly commendable driving habits, they do not generally rise to the level of crimes. Indeed, even though acts like speeding and (in some jurisdictions) driving while talking on a cellular phone are illegal, none compare to driving while drunk, which has long been "widely known and widely publicized" to be both illegal and highly dangerous. *See Fowler*, 938 F.Supp. at 480.

Although some courts have suggested that car crashes caused by drunk driving can never be accidents, *see, e.g.*, *Mullaney*, 103 F.Supp. 2d at 495, we cannot anticipate every future set of circumstances and do not adopt a per se rule. Rather, it is well settled that a plan fiduciary must assess all of the facts and circumstances attending a claim,

afford the insured adequate opportunity to address the causes and circumstances surrounding any occurrence, and make a reasoned, principled assessment supported by substantial evidence. *See, e. g.*, *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (citing *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). Here, however, the undisputed facts presented to the Plan administrator go a long way toward establishing that the insured's death was not accidental.

We in no sense intend to make light of the loss that plaintiff has suffered. We simply confirm as a matter of law that the Plan administrator's ruling was a reasonable one under the policy as written. The insured's conduct went beyond the careless and imprudent. Under the circumstances here, we think it was reasonable for ReliaStar to conclude that because the insured "put himself in a position in which he should have known serious injury or death could occur" his death was not "unexpected." Accordingly, the judgment of the district court is reversed, and we remand with instructions to enter judgment for the defendant.

*REVERSED*