**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0197n.06
Filed: March 12, 2009

**No. 08-3115**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SANDRA PANKIW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FEDERAL INSURANCE CO., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: KEITH, SUTTON and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge. Sandra Pankiw had an employee-benefit plan with Federal Insurance, which provided death benefits for covered "[a]ccident[s]." JA 116. At issue is whether a fatal car crash involving Pankiw's son was a covered accident. At the time of the crash, her son was 15 years old, unlicensed, under the influence of alcohol, driving a car that had been reported stolen less than an hour earlier and attempting to evade the police at nearly twice the speed limit. The district court held that this sad turn of events was not an "accident," as defined in the plan, and accordingly denied Pankiw's insurance-coverage claim. We affirm.

I.

Just before midnight on November 1, 2002, Westlake police saw Pankiw's 15-year-old son Alex drive by in a car that had been reported stolen less than an hour before. Alex's erratic maneuvering suggested—and later blood tests confirmed—that he was driving under the influence of alcohol. Two police cruisers pursued Alex with their lights and sirens activated, and a high-speed

chase ensued.  Reaching speeds of at least 60 miles per hour in a 35-miles-per-hour zone, Alex evaded the officers for several miles, crossing left of center to bypass slower traffic.  While attempting to reenter the right lane, Alex lost control of the car, spun off the road and hit a utility pole.  The collision split the car in two, killing him instantly.

In January 2003, Pankiw filed a claim with Federal Insurance seeking payment under her employer-provided accidental-death benefit plan, which amounts to an employee-benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.*  On April 16, 2003, Federal denied her claim, concluding that Alex's death did not result from an "accident."  JA 152.  Pankiw appealed this decision, and on June 23, 2003, Federal sent a second denial letter restating the same position.

Pankiw sued Federal in state court, asserting breach of contract, fraud and other state-law claims.  Federal removed the case to federal district court, where Pankiw added an ERISA claim that Federal had wrongfully denied benefits.  The district court dismissed Pankiw's state-law claims as preempted by ERISA, and both parties sought judgment on the ERISA claim based on the administrative record.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

Before reaching the merits of Federal's decision, the district court concluded that Federal had failed to comply with one of ERISA's procedural mandates.  Although Federal had not mentioned Alex's intoxication in either of its denial letters, it focused heavily on his alcohol intake to show that his crash was not an accident in arguing its case in the district court.  The court thus entered an order allowing Pankiw to produce additional evidence with respect to the intoxication issue.

Due to a glitch in the court's electronic-filing system, Pankiw never learned of the order.  The court ruled in Federal's favor based on the existing record, concluding that Alex's crash was not an

"accident" but a "likely consequence of [his] reckless and drunken driving." JA 38. Once it learned of the glitch, the court gave Pankiw another chance to present new evidence. Pankiw did so and moved to alter or amend the court's judgment, *see* Fed. R. Civ. P. 59(e), but the court stood by its original decision.

II.

Before turning to the merits of Pankiw's appeal, a few points of procedure deserve attention. Pankiw claims that the district court should have disregarded Alex's intoxication because that evidence was not in the administrative record, *see Wilkins*, 150 F.3d at 619, and because Federal did not rely on Alex's intoxication in denying her claim. We review the district court's determination of what evidence it could consider for abuse of discretion and give fresh review to its determination that Federal violated ERISA's procedural requirements. *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457, 459 (6th Cir. 2003).

No error occurred. A court reviewing a plan administrator's denial of benefits, it is true, generally "may not admit or consider any evidence not presented to the administrator." *Wilkins*, 150 F.3d at 619; *see also Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007). But the evidence of Alex's intoxication was presented to Federal prior to its April 16 decision: It received the police crash report on March 19 and the coroner's toxicology report on April 15, both of which showed that Alex had a blood-alcohol concentration of at least 0.09%.

It makes no difference that Federal apparently did not notice the reference to alcohol in the crash report or that, by the time Federal received the toxicology report on April 15, it already had prepared a first draft of its claim-denial letter. What matters is not whether Federal appreciated the evidence of Alex's intoxication before it made its decision but whether that evidence had been

"presented" to Federal before then. *Wilkins*, 150 F.3d at 619. Because the record shows (and Pankiw does not dispute) that Federal received the key documents before it denied her claim, the district court did not err in considering this evidence.

Even so, Pankiw protests, Federal made no mention of Alex's intoxication when it denied her claim, and ERISA requires a plan administrator to notify the claimant in writing of the "specific reasons for [its] denial" of the claim. 29 U.S.C. § 1133(1); *see also* 29 C.F.R. § 2560.503-1(g)(1); *Marks*, 342 F.3d at 460–61. Because Federal's initial and follow-up denial letters did not mention alcohol, Pankiw insists that Federal cannot raise the issue in defending its decision.

Yet, even if we grant the assumption that Federal violated § 1133, the district court remedied the problem. When an ERISA administrator denies a claim without identifying its reasons for doing so, the solution is to allow the claimant to present additional evidence to the district court (or to the administrator) to rebut the administrator's later-revealed rationales for denying the claim. *See VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992). The district court did just that. Consistent with *VanderKlok*, it gave Pankiw an opportunity to supplement the administrative record with evidence about Alex's potential intoxication and to file a brief explaining why that evidence did not support Federal.

Not good enough, Pankiw insists. Because ERISA, as she reads the statute, does not allow after-the-fact justifications for denying claims, the only sufficient sanction is to bar Federal from raising the intoxication issue at all. But this argument fails to come to grips with precedent, which makes clear that allowing a claimant to present additional evidence relating to the omitted issue cures any procedural defect. *See VanderKlok*, 956 F.2d at 617; *see also Marks*, 342 F.3d at 461; *cf. White v. Aetna Life Ins. Co.*, 210 F.3d 412, 418–19 (D.C. Cir. 2000). Once the court gives the claimant that

option, the parties are free to debate the salience of the administrator's before-the-fact and after-the-fact explanations for its decision.

Pankiw, at any rate, points to no prejudice from this sequence of events. No doubt Federal's failure to mention intoxication in its denial letters deprived Pankiw of the opportunity to respond initially to Federal's findings about Alex's intoxication. But the district court gave Pankiw that opportunity, and she has not alleged, much less established, that the court's order hindered her ability to respond adequately to Federal's position.

Lack of prejudice answers Pankiw's related argument (made for the first time on appeal) that, if Federal should be allowed to raise the intoxication issue now, it should only be in further administrative proceedings, and thus the district court should have remanded the matter to Federal for further review rather than allow Pankiw to present new evidence directly to the district court. What benefit Pankiw would derive from having Federal review her claim first remains a mystery, because there is no mystery in what Federal will do with the claim. All that remanding the matter to Federal would accomplish is delay—a delay in a final decision on Pankiw's claim and a delay in recovery should she prevail. Nothing in ERISA requires a remand where it would be a "useless formality." *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005) (internal quotation marks omitted).

### III.

That brings us to the merits of Pankiw's argument: that Alex's crash was an "accident" covered by the plan. We give fresh review to the district court's decision and to Federal's denial of her claim because (as the parties agree) the plan gave Federal no discretion to interpret its terms. *See Wilkins*, 150 F.3d at 613.

The plan requires Federal to pay benefits only for deaths and other injuries that result from an "accident." JA 116. And it defines "accident" as "a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss." JA 117.

In applying these definitions to her claim, Pankiw urges us to follow the course charted by the First Circuit in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990). Our circuit has not taken a position on whether *Wickman*'s approach should apply in this setting, *see, e.g.*, *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004), and there is some debate about what exactly *Wickman* requires for an injury to constitute an "accident," *compare, e.g.*, *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109–10 (7th Cir. 1998) (injury must be "reasonably foreseeable"), *with Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1127 (9th Cir. 2002) (injury must be "substantially certain" consequence of insured's conduct), *and Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1456 (5th Cir. 1995) (same); *see also Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 344 & nn.1–2 (4th Cir. 2006) (noting circuit split); *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 625 (6th Cir. 2007) (Boggs, J., concurring in the judgment). But that uncertainty and that debate need not detain us, for even if we apply the most plaintiff-friendly version of *Wickman*'s rule, Pankiw cannot prevail. *Cf. Eckelberry*, 469 F.3d at 344.

The record does not disclose how Alex—not yet sixteen and not licensed to drive—found himself behind the wheel of a car reported stolen 45 minutes earlier. But it does establish that, at the time of the accident, Alex had a blood-alcohol concentration of at least 0.09%, nearly the state-law limit for *adults* at the time, *see* Ohio Rev. Code Ann. § 4511.19(A)(2) (2001), and more than four times the maximum for drivers under 21, *see id.* § 4511.19(B)(1). Making matters worse, once

police began pursuing him, Alex accelerated rapidly to nearly double the speed limit to evade them, weaving in and out of traffic and even crossing the center line before he lost control.

Whether or not Alex himself appreciated the risks of his conduct, no reasonable person in his position could expect to walk away unscathed after leading the police on a high-speed chase through busy streets while intoxicated and without even basic driving instruction. *See Wickman*, 908 F.2d at 1089 (holding that insured's death was not an accident because "a reasonable person in [his] shoes would have expected to die or be seriously injured as a result" of his conduct, namely "climbing over the guardrail" of a bridge and "hanging on with only one hand"); *cf. Scott v. Harris*, __ U.S. __, 127 S. Ct. 1769 (2007). We have concluded before that a fatal car crash caused by someone driving under the influence was not an "accident." *See Lennon*, 504 F.3d at 621–24; *id.* at 625–26 (Boggs, J., concurring in the judgment); *accord Eckelberry*, 469 F.3d at 345–46; *Cozzie*, 140 F.3d at 1110–11. While *Lennon* applied a more deferential standard of review to the plan administrator's decision than we apply today, it involved a *licensed* adult driver who was *not attempting to flee police* and who was *not in a stolen vehicle. See* 504 F.3d at 618–19, 621. Pankiw has the harder case.

Pankiw maintains that the district court improperly refused to consider evidence she submitted to supplement the administrative record. The court refused to consider two documents: an affidavit from Pankiw herself and another from Alex's psychiatrist (except for one paragraph, which the district court allowed). But Pankiw's affidavit primarily described her own expectations about whether her benefit plan covered car crashes involving alcohol—views that have no bearing on Alex's intoxication or whether he reasonably should have foreseen death or serious injury as a consequence of his conduct. She also explained that she prevented Alex from obtaining a temporary

permit and taking driving lessons "because he was too impulsive." JA 89. But that only drives home the point that no reasonable person with Alex's background and characteristics would have expected to avoid serious injury in light of his actions.

The psychiatrist's affidavit has more relevance, but adding it to the equation does not lead to a different result. In addition to one paragraph describing Alex's medications and what effect they might have had in combination with alcohol—which the district court did consider—the psychiatrist conveyed her opinion that individuals like Alex with attention-deficit-hyperactivity disorder and dysthymic disorder "do not fully understand the risks or dangers associated with their conduct," and that even had he been warned Alex would not "fully comprehend or appreciate the dangers" of drinking and driving. JA 92. Since *Wickman* directs us to consider Alex's "personal characteristics and experiences" in discerning what a reasonable person standing in his shoes would have foreseen, 908 F.2d at 1088, Pankiw argues that the psychiatrist's opinion is pivotal.

We disagree. For one thing, the psychiatrist's affidavit at most casts vague, general doubt on Alex's ability to appreciate the risks his actions entailed. His conditions may have hindered him from grasping the gravity of some of his actions, and in a close case that hindrance might tip the balance. But the affidavit does not demonstrate that a person with Alex's conditions could not or would not have been aware of the dangers posed by driving at high speeds, without knowing how to drive, while under the influence, against the flow of traffic, in an effort to escape the police.

For another, even if we assume that no reasonable person with Alex's conditions could have foreseen a fatal crash as a result of his actions, that offers Pankiw little help. The plan excludes from coverage losses "caused by or resulting from . . . mental . . . illness." JA 117. Framing Alex's

No. 08-3115
*Pankiw v. Federal Ins. Co.*

inability to appreciate the risks posed by his actions as the result of his disorders brings him no closer to obtaining coverage. Pankiw would merely trade one reason for denying coverage for another.

IV.

For these reasons, we affirm.