**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1152

GARRY CARROLL,

Plaintiff - Appellee,

v.

CONTINENTAL AUTOMOTIVE, INC.; PENSION PLAN FOR HOURLY-PAID
EMPLOYEES OF CONTINENTAL AUTOMOTIVE, INC. AND CERTAIN
AFFILIATE COMPANIES,

Defendants - Appellants.

Appeal from the United States District Court for the Western District of North Carolina,
at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:13-cv-00693-GCM-DLH)

Argued:  January 24, 2017                    Decided:  April 24, 2017

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Susan P. Dion, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellants.
Norris Arden Adams, II, ESSEX RICHARDS, P.A., Charlotte, North Carolina, for
Appellee.

PER CURIAM:

Appellee Garry Carroll brought suit under ERISA[*] against Appellants Continental Automotive, Inc. ("Continental") and Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliate Companies (the "Plan," and collectively with Continental, "Appellants"), contending that the Plan wrongfully denied him Regular Early Retirement benefits. The district court determined that denying these benefits to Carroll was an abuse of discretion, and Appellants now challenge that determination. Carroll did, however, clearly qualify for Regular Early Retirement under the terms of the Plan. We therefore affirm the decision of the district court.

Appellants also challenge the district court's imposition of civil penalties for the Plan's failure to turn over documents in a timely manner as required by ERISA § 502(c), 29 U.S.C. § 1132(c). They argue that a court cannot impose these penalties absent a finding of prejudice or bad faith. Such a finding is not required by the statute, however, and thus this argument fails as well. Accordingly, we affirm the decision of the district court in full.

I.

Garry Carroll began working at Continental on February 12, 1979. On December 13, 2008, Carroll was laid off, but retained a right to be recalled to regular employment. Carroll's recall rights expired on December 13, 2010, meaning that his employment with

---

[*] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

Continental was terminated. On February 16, 2013, Carroll applied for Regular Early Retirement under the Plan, believing that he had satisfied the thirty year Vesting and Eligibility Service requirement for benefits. On April 5, 2013, however, Carroll was informed that he was not eligible for these benefits. The Plan found Carroll ineligible because it determined that the time he was laid off did not count toward his Vesting and Eligibility Service. If this time had counted, Carroll would have qualified for Regular Early Retirement.

On April 19, 2013, Carroll informed Continental of his intent to appeal this denial, and formally requested the administrative record and any other documents the Plan used to make its decision. Carroll sent a follow-up letter on May 30, 2013, once again requesting the administrative record, and formally appealing the denial of his claim for Regular Early Retirement. On June 14, 2013, the Plan produced the Plan document, the Summary Plan Description, and a personnel document titled "Notice of Removal from Payroll." J.A. 310. Then, on October 8, 2013, the Plan sent Carroll a letter upholding its denial of his claim. The Plan once again found that when an individual is laid off and does not return to active employment, the layoff period is not counted toward Vesting and Eligibility Service.

On December 17, 2013, having exhausted his administrative remedies, Carroll filed this lawsuit against Continental and the Plan in the U.S. District Court for the Western District of North Carolina, pursuant to ERISA. On March 2, 2015, the parties filed cross-motions for summary judgment. On August 31, 2015, a magistrate judge issued a Memorandum and Recommendation (M&R) recommending that the district

3

court grant Carroll's motion for summary judgment, and deny Continental's. The M&R also recommended imposing civil penalties against Continental for its failure to turn over the administrative record within 30 days of Carroll's request, as required by ERISA § 502(c), 29 U.S.C. § 1132(c).

On September 17, 2015, Continental filed objections to the M&R. Then, on January 27, 2016, the district court adopted the M&R in full, and entered judgment in Carroll's favor the following day. We have jurisdiction over the appeal of the district court's final judgment pursuant to 28 U.S.C. § 1291.

II.

Appellants first contest the district court's grant of summary judgment in Carroll's favor. We review the district court's summary judgment ruling de novo, and apply the same legal standard used by the district court. *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 343 (4th Cir. 2006). In ERISA cases, if a plan gives discretionary authority to its administrator to make benefits-eligibility determinations, then determinations by the administrator are reviewed for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Both parties agree that abuse of discretion review is appropriate in this case, as the Plan does have full discretionary authority.

Under the abuse of discretion standard, "the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 170–71 (4th Cir. 1998) (internal quotation marks omitted). However, "even as an ERISA plan confers

4

discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written." *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005), *abrogated on other grounds by Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353 (4th Cir. 2008). The discretionary authority to interpret a plan "is not implicated . . . [when] the terms of the plan itself are clear." *Kress v. Food Emp'rs Labor Relations Ass'n*, 391 F.3d 563, 567 (4th Cir. 2004).

Here, the district court held that the plain language of the Plan provided that Carroll was eligible for Regular Early Retirement, and therefore the Plan's denial of these benefits was an abuse of discretion.

The Plan states:

> *4.2 Regular Early Retirement.*
> Except as otherwise provided in the relevant Schedule of Benefits, a Member who continues in the employ of a Participating Entity or an Affiliate until he:
>
> > (a) has attained age fifty-five (55) and has completed at least ten (10) full years of Vesting and Eligibility Service; or
> >
> > (b) *has completed at least thirty (30) full years of Vesting and Eligibility Service*, regardless of his age;
>
> shall be eligible to retire and receive a retirement benefit commencing on the first day of any month on or after the date of early retirement, as he shall select in writing, in such form as is provided in Article V, and in the amount provided in Article VI.

J.A. 365 (emphasis added). There is no dispute that Carroll could not qualify under § 4.2(a), as he was not fifty-five when he requested benefits. Therefore, he could only

5

qualify under § 4.2(b), which requires thirty full years of Vesting and Eligibility Service.

"Vesting and Eligibility Service" is defined by the Plan as follows:

> 1.62  *Vesting and Eligibility Service.*
> For any Employee, the aggregate of all such Employee's period of *Continuous Service . . . .*

J.A. 363 (emphasis added).  Thus, we must look to the definition of "Continuous Service."  The Plan provides the following definition of "Continuous Service":

> 1.15  *Continuous Service.*
> For any Employee, any period (computed to the nearest full calendar month), including periods prior to the Effective Date, during which he was employed by a Participating Entity or any Affiliate.  Each such period shall be measured from the Employee's Date of Hire to his date of *Termination of Employment*.

J.A. 355 (emphasis added).  Both parties agree that Carroll's "Date of Hire" was February 12, 1979, and that the relevant date in dispute is the date of "Termination of Employment."  This is defined by the Plan as well:

> 1.56  *Termination of Employment.*
> With respect to an Employee, a Termination of Employment occurs upon the earlier of:
>
> > (a) the date the Employee quits, retires, is discharged, or dies; or
> >
> > (b) the first anniversary of the date the Employee was absent for any other reason; however . . .
> >
> > > 4.  if the Employee is absent due to layoff, has accrued 180 days of Continuous Service prior to the commencement of such layoff, is eligible for recall rights, and does not return to active employment within two (2) years, a Termination of Employment will occur on the earlier of:

6

i. *the second anniversary of the date the Employee was absent due to such layoff*; or

ii. the date upon which the Employee's period of absence due to such layoff equals the period of Continuous Service accrued by the Employee prior to such layoff.

J.A. 361–62 (emphasis added). No party contends that § 1.56(a) applies. Thus, the "Termination of Employment" date must be determined using § 1.56(b). Section 1.56(b)(4)(i) is clearly applicable: Carroll was laid off, had more than 180 days of Continuous Service prior to the layoff, was eligible for recall rights, and was not recalled within two years. Thus under § 1.56(b)(4)(i), Carroll's "Termination of Employment" occurred on December 13, 2010, the second anniversary of the date he was absent due to layoff.

Carroll's "Date of Hire" is February 12, 1979, and the date of his "Termination of Employment" is December 13, 2010. This equals a period of "Continuous Service" of 31 years, 10 months, and 2 days. This means that Carroll's "Vesting and Eligibility Service" period is also 31 years, 10 months, and 2 days. Thus, Carroll meets the requirement for Regular Early Retirement of "at least thirty (30) full years of Vesting and Eligibility Service." J.A. 365. This is apparent under the clear and unambiguous terms of the Plan. It was therefore an abuse of discretion for the Plan to determine that Carroll did not have sufficient "Vesting and Eligibility Service," and deny him Regular Early Retirement.

Appellants make several arguments that language in the Summary Plan Description (SPD) or in other provisions of the Plan creates an ambiguity that allows the

7

Plan to exercise its discretion. None of these arguments are persuasive. To the extent Appellants claim that language in the SPD conflicts with the language of the Plan, these arguments are improper. The SPD is not considered part of a plan, and any terms in the SPD that conflict with the terms of the plan are not enforced. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).

To the extent that Appellants point to other provisions in the Plan, claiming that they create an ambiguity, these arguments fail as well. None of the provisions of the Plan identified by Appellants are remotely relevant to determining whether Carroll qualifies for Regular Early Retirement. For example, Appellants point to § 1.17, a provision that defines what constitutes "Credited Benefit Service." J.A. 83. "Credited Benefit Service" is not used to determine qualification for Regular Early Retirement, however, and therefore is not relevant in determining whether Carroll is eligible. Similarly, Appellants cite § 1.56(b)(5)(iv), which describes how to determine the "Date of Termination" for employees who are laid off but then return to work within two years. J.A. 89–90. This clearly does not apply to Carroll, as he did not return to work within two years. Appellants have not identified any provision in the Plan that renders Carroll's eligibility for Regular Early Retirement ambiguous.

Under the clear and unambiguous terms of the Plan, Carroll had sufficient "Vesting and Eligibility Service" and was entitled to Regular Early Retirement. Because this is apparent from the plain language of the Plan, we need not consider the other factors from *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335,

8

342–43 (4th Cir. 2000). The decision to deny Carroll Regular Early Retirement is clearly unreasonable, and was thus an abuse of discretion.

III.

Appellants also contest the district court's decision to award civil penalties. ERISA states that a plan administrator who fails to comply with a participant's request for information within 30 days "may *in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." ERISA § 502(c), 29 U.S.C. § 1132(c) (emphasis added). Here, the court awarded Carroll $50 per day ($1,300 total) for the Plan's tardiness in producing the documents Carroll requested. Appellants argue that this was improper, because the court did not make a finding of bad faith or prejudice to Carroll. We review for abuse of discretion.

Appellants' argument has no merit. Although findings of prejudice and bad faith may be relevant to a penalty determination, courts analyzing ERISA do not condition the imposition of penalties on the existence of such findings. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 (1st Cir. 1993). Moreover, the district court did take into account the absence of prejudice, and imposed sanctions at $50 a day rather than at the statutory maximum of $100, as a result. Therefore, the district court acted well within its discretion in imposing civil penalties.

9

IV.

The district court correctly determined that the Plan abused its discretion in denying Carroll benefits, and properly imposed sanctions under ERISA § 502(c), 29 U.S.C. § 1132(c). Accordingly, the decision of the district court is

*AFFIRMED.*